November 25, 2019

Charlyn F. Stewart
Complainant

V.

Robert L. Wilkie
Secretary
Department of Veterans Affairs
Defendant

19-4602

Re: VA Case Nos.:

0705-XX08-2018104182
0705-20F5-2016103782

I am filing a civil action lawsuit, attached is the Finial Agency Decision documents, dated August 27, 2019, received September 3, 2019. Regarding my EEO Complaint of Discrimination and subjected to a hostile work environment based on race (Black), color (dark-brown), sex (female), national origin (Native-American), religion (Christian), and reprisal (prior EEO activity, since year 2000)

I would like to request a court appointed attorney and a Jury, to hear my plea.

Respectfully Submitted,

*Charlyn F. Stewart* (signature)

**Charlyn F. Stewart**
**4211 Pathway Court**
**Fresno, Texas 77545**

Ph # 832-741-9817
281-431-1033

DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION
WASHINGTON, D.C. 20420

| | |
|---|---|
| Charlyn F. Stewart,<br><br>*Complainant,*<br><br>v.<br><br>Secretary,<br>Department of Veterans Affairs,<br><br>*Agency,* | VA Case Nos. 0705-XX08-2018104182<br>0705-20F5-2016103782<br><br>United States Courts<br>Southern District of Texas<br>FILED<br><br>NOV 25 2019<br><br>David J. Bradley, Clerk of Court |

## FINAL AGENCY DECISION

### INTRODUCTION

Complainant filed two formal EEO complaints – the first on August 30, 2016, Complaint No. 0705-20F5-2016103782 (hereinafter referred to as "Complaint 1"), and the second on August 2, 2018, Complaint No. 0705-XX08-2018104182 (hereinafter referred to as "Complaint 2"). In both complaints, Complainant alleged that officials at the Office of Resolution Management (ORM) in Houston, Texas, discriminated against her as referenced below. ORM accepted and appropriately investigated the claim of harassment raised in Complaint 1, and properly notified Complainant of its determination to dismiss two discrete acts, in accordance with the Commission's regulation governing partial dismissals at 29 C.F.R. Section 1614.107(b). ORM also accepted Complaint 2 in its entirety and conducted another appropriate investigation.[1]

At the conclusion of both independent investigations, the Department notified Complainant in writing of the right to request either a hearing and decision by an EEOC administrative judge, with a subsequent final action by the Department, or an immediate final agency decision by the Department without a hearing. With regard to Complaints 1 and 2, Complainant requested immediate final agency decisions without hearings for either complaint.

---

[1] The above-referenced complainants were filed by a former internal ORM employee; therefore, both complaints were identified as "conflict cases" and referred to an outside contracting firm for administrative processing and investigation.

Thus, the complaint files were forwarded to the Department's Office of Employment Discrimination Complaint Adjudication (OEDCA) for final agency decisions based on the investigative records. OEDCA received the files from ORM on February 15, 2019 (Complaint 1), and July 19, 2019 (Complaint 2).

On August 6, 2019, OEDCA consolidated Complaints 1 and 2. Accordingly, the two separate complaints will be analyzed together in this Decision.

## CLAIMS

### Complaint 1

Whether Complainant was discriminated against and subjected to a hostile work environment (non-sexual) based on race (Black), color (dark-brown), sex (female), national origin (Native-American), religion (Christian), and reprisal (prior EEO activity), as evidenced by the following events:[2]

1. On March 16, 2016, she was removed from the Program Assistance Interview Panel without notice.

2. On March 31, 2016, the Program Assistant informed Complainant that she (the Program Assistant) would go through someone other than Complainant when requesting assistance to review contract cases.

3. On April 7, 2016, she was not selected to attend the Federal Dispute Resolution (FDR) or EEOC Excel Training Conferences.[3]

4. On April 22, 2016, a Supervisor and a Manager told her they were going to report to Complainant's supervisor that Complainant declined to review contract investigations.

5. On May 6, 2016, the Assistant District Manager told Complainant that she would never get her position when she retired, and stated she was glad that Complainant was no longer serving as the Counselor Team Leader.

6. From April through May 2016, she was not selected to serve on the interview panel for the EEO Counselor Team Leader position.

---

[2] ORM accepted Events 3, 6, 8, 11, and 12 as timely raised discrete claims of disparate treatment, as well as evidence in support of Complainant's harassment claim. We will adjudicate the complaint accordingly. (Report of Investigation (ROI) 1, "Claims to be Investigated"; ROI-2, "Claims to be Investigated.")

[3] Upon review, this Office dismisses Complainant's claim alleging she was discriminated against when she was removed from the Program Assistance Interview Panel (Claim 1), on the grounds of untimely EEO Counselor contact. See EEOC Regulation 1614.105(a)(1) & 107(a)(2). This matter will be addressed as evidence to support Complainant's harassment claim. (ROI-1, "Claims to be Investigated.")

2

7. On September 21, 2016, she was accused of trying to involve herself in the counseling of a customer when she was "no longer on the Counselor's Team."

**Complaint 2[4]**

8. On approximately April 2, 2018, she learned that she had not been selected for the position of Supervisory Equal Opportunity Specialist, GS-0260-13, advertised under Vacancy Announcement No. 705-18-DML-10128095.

9. On August 1, 2018, her supervisor spoke loudly and abruptly to her when Complainant questioned whether he had signed her Standard Form (SF) 182 to attend training.

10. On August 8, 2018, her supervisor challenged Complainant's leadership ability during a leadership meeting.

11. On August 8, 2018, her supervisor forced her to eject herself from an August 13, 2018, FDR Training session, which was previously approved.

12. On August 30, 2018, she was not appointed to act in the District Manager position.

## SUMMARY OF FACTS[5]

At the time of the matters giving rise to this complaint, the U.S. Department of Veterans Affairs (VA or Agency) employed Complainant as a Lead EEO Specialist (Investigator), GS-0260-13, ORM, in Houston, Texas. Complainant named the following individuals as Responsible Management Officials (RMOs) in this complaint: the Assistant District Manager (African-American, black, female, American, Baptist, prior EEO activity) (RMO-1), GS-0260-13;[6] and the Continental District Manager (African-American, brown, male, African-American, Baptist, prior EEO activity) (RMO-2), GS-0360-14. (ROI-1, "Formal Complaint"; "Counselor's Report"; Tab A; ROI-2, "Formal Complaint"; "Counselor's Report"; Tab A)

Complainant engaged in protected EEO activity when on unspecified dates between 1998 and 2004, she filed approximately eight formal complaints of discrimination against the Agency. (ROI-1, "Counselor's Report," p. 5)

---

[4] The claims in this Decision have been renumbered in order to list them in continuous order.

[5] This Decision contains only those facts which are relevant to the claims in the instant complaint. Every submission of evidence was given due consideration whether or not it was specifically mentioned herein.

[6] RMO-1 retired from Federal service on December 31, 2017. (ROI-2, Tab D, p. 2)

3

### Non-Selection

On February 1, 2018, VA advertised a vacancy announcement for the position of Supervisory EEO Specialist, ORM, GS-0260-13 (Vacancy Announcement No. 705-18-DML-10128095). The vacancy announcement advertised for two separate positions – one in ORM's Westchester, Illinois location; the other in ORM's Houston, Texas location. The vacancy announcement further indicated that the positions were full-time, permanent, and open to status candidates (Merit Promotion and Veterans Employment Opportunity Act (VEOA) Eligibles). (ROI-2, Tab B, pp. 35 – 40)

On an unspecified date, Complainant timely applied for the position at issue via the Office of Personnel Management's (OPM's) USA Jobs website. A total of six individuals were scheduled to be interviewed, including Complainant; however, one individual declined the opportunity to interview for the position. The interview panel was comprised of two individuals – RMO-2 (who also served as the Selecting Official), and the Assistant District Manager (race, color, sex, national origin, religion, and prior EEO activity status unspecified) for ORM's Southeastern District Office. During the interviews, each applicant was asked the same set of five performance-based interview (PBI) questions. (ROI-2, Tab A, p. 7; Tab B, pp. 5 – 13)

Complainant never received formal notification that she was not selected for the position; rather, on April 2, 2018, she learned that she was not chosen when the selectee (S-1) reported for duty in the Lead EEO Specialist position. (ROI-2, Tab A, p. 7)

### Hostile Work Environment

Additionally, Complainant alleged that she was subjected to a hostile work environment based on race, color, sex, national origin, religion, and reprisal. As indicated supra, she cited 12 events in support of her claim. These events occurred from March 16, 2016, thru August 30, 2018. As explained in greater detail below, management denied that several of these events occurred as Complainant alleged, and provided legitimate nondiscriminatory responses to Complainant's remaining claims. (ROI-1, Tabs A – J; ROI-2, Tabs A – J)

## ANALYSIS

### 1. Statement of Applicable Law

The law prohibiting discrimination based on race, color, sex, national origin, religion, and reprisal is Title VII of the Civil Rights Act of 1964, as amended, Section 701 et seq., 42 U.S.C. 2000e et seq. (Title VII). Federal sector equal employment opportunity regulations are set out in 29 C.F.R. Part 1614.

## Disparate Treatment

Generally, the adjudication of a complaint of discrimination alleging disparate treatment under Title VII follows a three step evidentiary analysis. First, the burden is on the complainant to establish a prima facie case of discrimination. McDonnell Douglas Corporation v. Green, 411 U.S. 792 (1973); Board of Trustees of Keene State College v. Sweeney, 439 U.S. 24 (1978); Furnco Construction Corporation v. Waters, 438 U.S. 567 (1978). This means that the complainant must present a body of evidence such that, were it not rebutted, the trier of fact could conclude that unlawful discrimination did occur. Teamsters v. United States, 431 U.S. 324 (1977). The complainant can raise an inference of discrimination by showing that the reasons most commonly given by management to justify a particular employment decision or action do not apply in the complainant's case. Second, if the complainant meets the burden of presenting a prima facie case, then management has a burden of production to articulate a legitimate, nondiscriminatory reason for its actions. Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981). The evidence presented by management need not establish management's actual motivation, but must be sufficient to raise a genuine issue of material fact as to whether management discriminated against the complainant. If management meets this burden of production, the presumption of discrimination raised by the prima facie case is rebutted and drops from the case altogether. Burdine, 450 U.S. at 253. Third, in order to prevail, the complainant must show by a preponderance of the evidence that management's stated reason is a pretext for discrimination. Price Waterhouse v. Hopkins, 490 U.S. 228 (1989); Burdine, 450 U.S. at 256; McDonnell Douglas, supra. The complainant may show pretext by evidence that a discriminatory reason more likely than not motivated management, that management's articulated reasons are unworthy of belief, that management has a policy or practice disfavoring the complainant's protected class, that management has discriminated against the complainant in the past, or that management has traditionally reacted improperly to legitimate civil rights activities. McDonnell Douglas, supra.

The ultimate burden of showing that management intentionally discriminated against the complainant remains at all times with the complainant. U.S. Postal Serv. Board of Governors v. Aikens, 460 U.S. 711 (1983); Burdine, 450 U.S. at 257. A finding of pretext - i.e. a finding of sufficient evidence to disbelieve management's stated reason for its decision - does not necessarily compel a finding of discrimination. St. Mary's Honor Center v. Hicks, 509 U.S. 502, 511 (1993). Proof of pretext is simply one form of circumstantial evidence that is probative of intentional discrimination, and such proof may be quite persuasive. Thus, the complainant's prima facie case, when combined with sufficient evidence to find that management's asserted justification is false, may permit a finding of discrimination. Reeves v. Sanderson Plumbing Products, Inc., 120 S. Ct. 2097 (2000). This is not to say that such a showing will always be adequate to find discrimination. As the Supreme Court noted in Reeves, there will certainly be instances where, despite such a showing, the record conclusively reveals some other nondiscriminatory reason for management's decision, or if the complainant presented only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred.

Thus, for example, if the circumstances show that management gave a false explanation to conceal something other than discrimination, the inference of discrimination will be weak or nonexistent. Reeves, supra (citing Fisher v. Vassar College, 114 F.3d 1332, 1338 (2nd Circuit 1997). Whether a finding of discrimination is appropriate in a particular case will depend on a number of factors, including the strength of the complainant's prima facie case, the probative value of the proof that management's explanation is false, and the strength of other evidence that discrimination did not occur. Reeves, supra. Moreover, the analytical framework in McDonnell Douglas was never intended to be rigid, mechanized, or ritualistic. Rather, it is merely a sensible, orderly way to evaluate the evidence in light of common experience as it bears on the critical question of discrimination. Furnco, 438 U.S. at 577. Thus, whether or not the complainant has established a prima facie case, where management has provided a legitimate, nondiscriminatory explanation for its action, the factual inquiry must proceed to a decision on the ultimate factual issue in the case - i.e. whether management's actions were discriminatory within the meaning of Title VII. Aikens, supra.

### Prima Facie Case

The elements of a prima facie case of discrimination are determined by the factual circumstances of the case and the bases of discrimination alleged. McDonnell Douglas, 411 U.S. at 802 n.13. In order to establish a prima facie case of disparate treatment, the complainant must generally show: (1) membership in a protected class, (2) an employment situation comparable to that of other employees not of the same protected class, and (3) treatment that is different than that experienced by those other employees with respect to the terms, conditions, or benefits of employment. McDonald v. Santa Fe Trail Transportation Corp., 427 U.S. 273 (1976); Scott v. Dep't of Defense, EEOC Appeal No. 01902727 (Sept. 24, 1990). Employees are in comparable employment situations when it is reasonable to believe that they would receive the same treatment in the context of a particular employment decision. See Lindemann & Grossman, Employment Discrimination Law, 3rd Edition, Chapter 2, pages 30-33 (1996). In order for comparative employees to be considered similarly situated, all relevant aspects of the complainant's situation must be nearly identical to those of the comparative employees. O'Neal v. U.S. Postal Serv., EEOC Request No. 05910490 (July 23, 1991); Powell v. U.S. Postal Serv., EEOC Appeal No. 01911979 (November 25, 1991). Thus, in order to be similarly situated, the comparative employees must have dealt with the same supervisor and have been subject to the same standards. Mitchell v. Toledo Hospital, 964 F.2d 577 (6th Circuit 1992). Even in cases where there are no similarly situated employees, the complainant may be able to establish a prima facie case by showing: (1) membership in a protected class; (2) the occurrence of an adverse employment action; and (3) some evidence of a causal relationship between membership in the protected class and the adverse action. Ward v. U.S. Postal Serv., EEOC Request No. 05920219 (June 11, 1992), citing Potter v. Goodwill Industries of Cleveland, 518 F.2d 864 (6th Circuit 1975) and Leftwich v. U.S. Steel Corp., 470 F. Supp. 758 (W.D. Penn. 1979).

Non-selection

A prima facie case of discriminatory non-selection is generally established by showing that: (1) complainant is a member of a protected group; (2) complainant applied and was considered for a job for which the employer was seeking applicants; (3) despite complainant's qualifications, complainant was rejected; and (4) the employer selected a person of similar qualifications who was not of complainant's protected group. McDonnell Douglas v. Green, 411 U.S. 792, supra, Texas Dep't of Community Affairs v. Burdine, 450 U.S. 248, supra; Weinstein v. U.S. Postal Serv., EEOC Appeal No. 01830674 (Feb. 8, 1983).

## Hostile Work Environment

Discriminatory harassment consists of personal slurs or other denigrating or insulting verbal or physical conduct relating to an individual's race, color, sex, national origin, religion, or prior EEO activity. See e.g. 29 C.F.R. § 1606.8 (national origin discrimination). Harassment directed against an individual because of that individual's status as a member of a protected group or engagement in protected EEO activity may violate Title VII. Davis v. U.S. Postal Serv., EEOC Appeal No. 01832914 (July 23, 1987); Criner v. Dep't of the Navy, EEOC Request No. 05880097 (July 21, 1988). In cases involving harassment, court and EEOC decisions have modified somewhat the McDonnell Douglas analytical approach in order to achieve a sensible, orderly way to evaluate the evidence. To establish a prima facie case of harassment, the complainant must show: (1) membership in a protected class; (2) unwelcome personal slurs or other denigrating or insulting verbal or physical conduct; (3) that the harassment complained of was based on the complainant's membership in the protected class; and (4) that the harassment was sufficiently severe or pervasive to affect a term or condition of employment, and/or that the harassment had the purpose or effect of unreasonably interfering with the complainant's work performance and/or that the harassment had the purpose or effect of creating an intimidating, hostile, or offensive work environment. Compare McGinnis v. Dep't of Defense, EEOC Appeal No. 01902760 (Nov. 15, 1990); Sexton v. U.S. Marine Corps, EEOC Appeal No. 01821475 (Aug. 30, 1983); Cudjoe v. Dep't of the Navy, EEOC Appeal No. 01880743 (June 14, 1988); 29 C.F.R. § 1604.11 (sexual harassment).

In cases involving harassment by coworkers, the complainant must also show as part of the prima facie case that management failed to take prompt and appropriate action although it was aware of the harassment. Lutticken v. Dep't of Health and Human Services, EEOC Request No. 05900386 (Apr. 27, 1990). For harassment to be considered discriminatory, it must be severe or pervasive. Harris v. Forklift Systems, Inc., 510 U.S. 17 (1993). Actual psychological or emotional injury is not required. Harris, supra. However, unless the conduct is very severe or persistent, a single incident or group of isolated incidents will not be regarded as discriminatory harassment. See e.g. Scott v. Sears Roebuck and Corp., 798 F.2d 210 (7th Circuit 1986); Hansen v. Rice, EEOC Appeal No. 01920621 (Sept. 10, 1992). Harassment, as the term is used in Title VII cases, refers to more than being subjected to stress. Lin v. U.S. Postal Serv., EEOC

Appeal No. 01932880 (Dec. 23, 1993). The following factors are pertinent to determining whether a work environment is hostile, intimidating, or abusive: (1) whether the conduct in question is verbal or physical, or both; (2) whether the conduct was repeated, and, if so, how frequently; (3) whether the conduct was hostile or patently offensive; (4) whether the alleged harasser was a supervisor or a coworker; (5) whether more than one person joined in the harassment; and (6) whether the harassment was directed at more than one individual. King v. Hillen, 21 F.3d 1572 (Federal Circuit 1994); Crane v. U.S. Postal Serv., EEOC Appeal No. 01924585 (April 22, 1993). Evidence of the general working atmosphere involving employees other than the complainant is also relevant to the issue of whether a hostile work environment exists. Vinson v. Taylor, 753 F.2d 141 (DC Circuit 1985), affirmed in relevant part and reversed in part, sub nom Meritor Federal Savings Bank v. Vinson, 477 U.S. 57 (1986); Delgado v. Lehman, 665 F. Supp. 460 (E.D. Virginia 1987).

The conduct in question should be evaluated from the standpoint of a reasonable person, taking into account the particular context in which it occurred. Highlander v. Kentucky Fried Chicken Nat'l Mgmt. Corp., 805 F.2d 804 (6th Circuit 1986). Conduct that is not severe or pervasive enough to create an objectively hostile or abusive environment - an environment that a reasonable person would find hostile or abusive - is beyond Title VII's purview. Furthermore, if the complainant does not subjectively perceive the environment to be abusive, the conduct has not actually altered the conditions of employment, and there is no Title VII violation. Harris, supra. A prima facie case of harassment may be rebutted by the production of evidence to show that: (1) the alleged conduct did not occur; (2) the conduct complained of was not unwelcome; and/or (3) the alleged harassment was not sufficiently severe or pervasive to adversely affect the complainant's employment opportunities, to unreasonably interfere with the complainant's performance, or to create an abusive working environment. Even where harassment has occurred, management may avoid Title VII liability for the harassment by showing that: (1) management took prompt and appropriate remedial action as soon as it became aware of the circumstances (a defense which applies only to harassment by coworkers); and/or (2) there is no basis under agency principles for imputing liability to the employer. McGinnis, EEOC Appeal No. 01902760; Quinn v. United States Postal Service, EEOC Request No. 05900546 (August 23, 1990); Crane, EEOC Appeal No. 01924585.

An employer is liable for harassment created by a supervisor who is authorized to take tangible employment actions against a victimized employee. The supervisor must have the power to make a significant change in the employee's employment status, such as through hiring, firing, failing to promote, reassignment with significantly different responsibilities or causing a significant change in benefits. See Vance v. Ball State University, U.S. No. 11-556 (2013). However, where no tangible employment action has been taken by the supervisor, the employer may avoid liability by showing: (1) that the employer exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) that the complainant unreasonably failed to take advantage of any preventative or corrective opportunities provided by the employer or to avoid harm otherwise. The employer may not avoid liability when the supervisor's harassment culminates in a tangible employment action such as discharge, demotion, or undesirable

reassignment. Burlington Industries, Inc. v. Ellerth, 524 U.S. 742 (1998); Faragher v. City of Boca Raton, 524 U.S. 775 (1998). See also Deffenbaugh-Williams v. Wal-Mart Stores, 156 F.3d 581, (5th Circuit 1998) (applying the liability principles in sexual harassment cases established in Faragher and Ellerth to claims of racial harassment).

A showing of discriminatory harassment must include discrete comments directed against the complainant or disparate treatment which supports an inference of discriminatory harassment. Lin, EEOC Appeal No. 01932880. Accordingly, it is appropriate to review the complainant's allegations under a disparate treatment analysis where there is no direct evidence of discriminatory harassment, that is, where there is no evidence of personal slurs or other denigrating or insulting verbal or physical conduct relating to the complainant's membership in a protected class. Applying the foregoing principles to the complainant's allegation of discriminatory harassment, we must first determine whether the alleged discriminatory conduct occurred. Then we must determine whether the conduct that occurred constitutes harassment within the meaning of Title VII. If discriminatory harassment is found, we must then determine whether management is liable for the harassment.

### Reprisal

Employers may not take retaliatory actions that are likely to deter a reasonable employee or applicant from engaging in protected EEO activity. Burlington N. and Santa Fe Ry. Co. v. White, 548 U.S. 53 (2006); see also, 42 U.S.C. § 2000e-3(a). A prima facie case of reprisal must show: (1) the complainant engaged in a protected activity, (2) management was aware of the protected activity, (3) management took action(s) which adversely impacted the complainant after the protected activity, and (4) the management action occurred in a manner that suggests the Complainant's protected EEO activity was a motivating factor for the action. Clemente M. v. Dep't of Army, EEOC Appeal No. 0720140015 (March 16, 2017); Petitioner v. Dep't of the Interior, EEOC Petition No. 0320110050 (July 16, 2014), n.6 (declining to adopt the stricter standard enunciated in Univ. of Texas Med. Ctr. v. Nasser, 570 U.S. 338 (2013).supporting a charge of discrimination). See also Equal Employment Opportunity Commission Compliance Manual, Vol. 2, Section 8, at 8-13 (Retaliation).

### 2. Discussion

### Disparate Treatment – Claims 3, 6, 8, 11, and 12

### Prima Facie Case

When management has articulated reasons for the actions complainant has alleged to be discriminatory, it is appropriate to bypass the prima facie case and move directly to management's stated reasons and the complainant's pretext evidence. In this case, management has provided reasons for its actions. See U.S. Postal Service Board of

Governors v. Aikens, 460 U.S. 711, 713-17 (1983); Holley v. Dep't of Veterans Affairs, EEOC Request No. 05950842 (Nov. 13, 1997).

## Management's Responses

Regarding Complainant's allegation that she was not selected to attend the FDR and Excel Training Conferences (Claim 3), RMO-1 testified:

> [ORM] headquarters, located in Washington D.C., was informed they could nominate a certain number of employees within the organization to attend the [EEOC] EXCEL [Conference], and Federal Dispute Resolution Conference (FDR). Higher headquarters advertised through an ORM BLOG entry [ ] that the organization projected having funds to send 9 individuals to the FDR conference and 15 individuals to the EXCEL conference (this is out of an organization of 200 plus). The BLOG entry indicated that those interested needed to submit a written submission [of] no more than 1 page in length, identifying the desired conference while answering two questions: 1) Why do you want to attend; and, 2) How would you benefit from attending?
>
> The BLOG entry advised interested employees to submit their request[s] to the supervisor who would upload the requests to the ADAS (Associate Deputy Assistant Secretary) sharepoint site on or before March 9, 2016. The BLOG entry went on to state, '[r]andom selection; e.g., pulling names from a hat will be applied if we have more interest than slots.'
>
> So, the individual field offices did not make the final selections. That was done by higher headquarters.

(ROI-1, Tab C, pp. 4, 12)

Regarding Complainant's allegation that she was not selected to serve on the EEO Counselor Team Leader interview panel (Claim 6), RMO-1 testified:

> Recruitment to fill the EEO Counselor Team Leader vacancies occurred in May 2016. I made the decision to select the interview panel and the Complainant was not selected to be on the panel . . . .
>
> My decision was based on selecting team leaders; I selected [the] Investigator Team Leader, the sole team leader at the time in our North Little Rock, AR office. I also selected [ ] a team leader in our Houston office. Our Houston, Texas office had two team leaders at the time – [S-1], Case Manager Team Leader, and the Complainant, second Investigator Team Leader. In an effort to rotate team leaders I select individuals in senior positions in the office such as case managers and/or former team leaders. Although I do not track how many times I select panel members I utilize the

> *rotational methodology to afford the employees opportunity to participate on a panel. [The] Case Manager and former Investigator Team Leader was selected to be on the interview panel.*

(ROI-1, Tab B, p. 14)

Regarding Complainant's allegation that she was not selected for the position of Lead EEO Specialist (Claim 8), RMO-2 acknowledged that he served as the Selecting Official for the position at issue, and further testified:

> *The max score an applicant could have achieved for the five [interview] questions is 25. Each question has a max [of] 5 point[s] for [an] excellent example and response, 3 points for [a] good example and response, 1 point for [a] fair example and response, [and] 0 points for [a] poor example and response.*
>
> *The selectee achieved the highest overall score of 40. Scores for other applicants interviewed were 34, 32, [and] 26. Complainant scored 24.*
>
> *The applicant who scored the highest on the PBI [questions] was selected. All applicants referred by [Human Resources (HR)] were considered qualified for the job by HR . . . .*
>
> *[S1] was selected. His prior position was as the Case Manager Reviewer, GS-13, which is essentially the Case Manager Team Leader. He is an African-American, brown, African decent, male, religion unknown. Not aware if he has engaged in EEO activity during [the] time prior to [his] employment with ORM. No EEO activity during [his] employment with ORM.*

(ROI-2, Tab B, pp. 8, 10)

The former Assistant District Manager (ADM-1) (Caucasian, white, female, American, Jewish, no prior EEO activity) served as the Concurring Official for the position at issue. ADM-1 corroborated RMO-2's statement, and further explained that RMO-2's written selection justification to her provided:

> *[I] [r]ecommend the selection of [S1]. [S1] scored the highest on the Performance Based Interview. He currently serves as the Case Manager Team Lead (Reviewer) in this office and has performed in an outstanding manner; frequently taking on responsibilities far beyond his scope of responsibility. In addition, [S1's] resume reflects a wealth of EEO supervisory experience and overall background that make him well qualified for this position.*

(ROI-2, Tab E, p. 10)

Regarding Complainant's allegation that RMO-2 forced her to eject herself from an FDR training session (Claim 11), RMO-2 testified:

11

> *Complainant was not forced to not attend this training. During the team leader meeting, I did not state to those assembled I would not approve their requests to attend training of this type. I was simply communicating my thought that we, as leaders, should consider our worthy subordinates first. Complainant elected not to attend. I supported her request to attend. After the meeting I mentioned, she elected not to attend. As I mentioned, additional slots became available; I then encouraged the complainant to add her name back to the list, as there were additional slots. She declined. When the training opportunity was initially advertised, the complainant applied and I supported her attendance.*

(ROI-2, Tab B, p. 18)

Regarding Complainant's allegation that she was not appointed to act in the District Manager position (Claim 12), RMO-2 testified:

> *Not exactly clear what [C]omplainant is alleging here, and I don't recall exactly what happened given the passage of time and the fact that no roster is maintain[ed] identifying who served as acting, [and] when. Normally, if the District Manager is away, the Assistant District Manager serves as Acting. If the Assistant District Manager is also away, you sort of try to determine who is available and start thinking about your Case Managers.*
>
> *Because for the longest time, one of the Case Managers were selected to fill this role because they were senior to other staff, and served in the role, among other things, as senior advisors so to speak, to the field manager. At some point, I started considering the team leads as a way to provide some experience. The overwhelming majority of time either the Field Manager or Assistant Field Manager will be available. So, on the rare occasions when this is not the case, you don't go through any formal process trying to determine, 'okay, who was the last person to serve?' You have your go-to people, not because of some discriminatory reason, but because of their grade, experience, [and] expertise.*
>
> *So, when you are trying to make an on-the-spot decision, you simply say, 'is so-and-so available? OK, he or she is acting for that day or afternoon, whatever.' There is no intent to deny the complainant or anyone else an opportunity, you are simply trying to make an on-the-spot decision, on top of all the other duties and events going on.*

(ROI-2, Tab B, p. 21)

Lastly, RMO-1, RMO-2, and ADM-1 testified that they did not consider Complainant's race, color, sex, national origin, religion, or prior EEO activity when taking the actions alleged in Claims 3, 6, 8, 11, and 12. (ROI-1, Tabs A – J; ROI-2, Tabs A – J)

We find these to be legitimate, nondiscriminatory, nonretaliatory responses.

## Pretext

Complainant failed to provide any evidence demonstrating that management's reasons were pretext. To show management's proffered reasons were pretext, Complainant must provide evidence proving management's reasons were factually baseless, were not the actual motivation for its decisions, or were insufficient to motivate its actions. Balderston v. Fairbanks Morse Engine Division, 328 F.3d 309, 323 (7th Circuit 2003).

Here, Complainant presented as evidence of pretext, her own subjective testimony reflecting her belief that she was subjected to reprisal and national origin discrimination. Specifically, Complainant alleged that management's actions were retaliatory (Claims 8, 11, and 12)[7] because she and RMO-2 had recently attended an EEOC hearing when he decided not to select her for the Lead EEO Specialist position; and when he recommended that she nominate a subordinate employee to attend FDR training, instead of attending herself. (ROI-2, Tab A, pp. 17, 24, 28) However, Complainant failed to provide any evidence in support of her allegations. Moreover, as indicated above, RMO-1, RMO-2, and ADM-1 responded to Complainant's allegations and testified that her race, color, sex, national origin, religion, and prior EEO activity were not factors in their decisions. We also note that Complainant failed to present evidence to establish that her supervisors' testimony or the evidence of record is not credible or should not be believed. Lastly, with regard to Complainant's non-selection (Claim 8), we note that our independent review of the record (applicant resumes and panel member interview scoring matrix), we are not persuaded that Complainant's qualifications were plainly superior to those of S-1. (ROI-1, Tabs A – J; ROI-2, Tabs A – J; 1 – 13)

Based on these reasons, and on the entirety of evidence in the record, we find that Complainant failed to present adequate evidence to prove that management's responses were actually pretext for discrimination or reprisal.

## Harassment

For the purpose of our analysis, we will assume arguendo that all of the events in the complaint occurred as alleged by Complainant, despite evidence explaining those events. We will also assume, without finding, that Complainant established elements 1, 2, and 4 of a prima face case for harassment. However, for the reasons set forth below, we must find that she failed to establish that she was subjected to a hostile work environment.

Complainant's main issues with her supervisors involved what she perceived as objectionable decisions that were harassing in nature and discriminatory based on her race, color, sex, national origin, religion, and prior EEO activity. (Id.) However, Complainant failed to demonstrate that her supervisors' conduct was due to her protected classes.

---

[7] As indicated supra, Complainant failed to provide an affidavit for Complaint 1 (Claims 3 and 6). (ROI-1, Tab A)

It is well settled that no matter how unpleasant, the nature of a working environment, the conduct must be due to complainant's protected characteristic to support a hostile environment claim. See Stahl v. Sun Microsystems, Inc., 19 F.3d 533 (10th Circuit 1994).

We find that the weight of the evidence indicates that management's conduct towards Complainant was due to interpersonal friction and RMO-1's and RMO-2's management styles, rather than Complainant's race, color, sex, national origin, religion, or prior EEO activity. Furthermore, the record establishes that Complainant's allegation of harassment consists solely of her dissatisfaction with management's job-related decisions and conduct. Ultimately, Complainant offers no probative evidence of a nexus between any of management's behavior and her protected classes. (ROI-1, Tabs A – J; ROI-2, Tabs A – J; 1 – 13)

Accordingly, we find that Complainant failed to establish that she was subjected to a hostile work environment based on her race, color, sex, national origin, religion, and prior EEO activity.

## CONCLUSION

Complainant failed to prove that she was discriminated against as alleged.

## RIGHT OF APPEAL

Within 30 days of receipt of this final agency decision, complainant has the right to appeal it to: **Equal Employment Opportunity Commission, Office of Federal Operations, P.O. Box 77960, Washington, DC 20013**. If an appeal is filed, EEOC Form 573 should be used. A copy of EEOC Form 573 is attached.

A copy of the appeal to the EEOC **must** also be sent to the VA's Office of General Counsel at the following address: **Department of Veterans Affairs, Office of General Counsel (024), 810 Vermont Avenue, NW, Washington, DC 20420**.

Statements or briefs in support of the appeal **must** be submitted to the EEOC within 30 calendar days of filing the appeal. A copy of any such statement or brief, including any statements made on EEOC's Appellant Docketing Statement, must also be sent to the VA's Office of General Counsel at the above address.

If an appeal is filed with the EEOC, the appeal, and any subsequently filed statement or brief, **must** contain a statement certifying the date and method by which copies of these documents were served on the VA's Office of General Counsel.

If the complainant files an appeal with the Commission beyond the above-noted time limit, the complainant should provide the Commission with an explanation as to why the appeal should be accepted despite its untimeliness. If the complainant cannot explain why timeliness should be excused, the Commission may dismiss the appeal as untimely.

## RIGHT TO FILE A CIVIL ACTION

Complainant also has the right to file a civil action in an appropriate United States District Court. Complainant may file a civil action:

> within 90 days of receipt of this final decision <u>if no appeal to EEOC has been filed</u>; or

> within 90 days after receipt of the EEOC's final decision on appeal; or

> after 180 days from the date of filing an appeal with the EEOC if there has been no final decision by the Commission.

Complainant **must** name the person who is the official head of the Department of Veterans Affairs as the defendant. Department means the national organization, and not just the local office, facility, or unit in which complainant works. Complainant may not name just the Department. Complainant must name **Robert L. Wilkie** as the defendant. Complainant must also state the official title of the Department head. The official title of the head of the Department of Veterans Affairs is **Secretary of Veterans Affairs**. Failure to provide the name or official title of the head of the Department may result in dismissal of the case.

If complainant decides to file a civil action under Title VII (discrimination due to race, color, religion, sex, national origin, or reprisal) or under the Rehabilitation Act of 1973, as amended, (discrimination due to disability), and if complainant does not have or cannot afford the services of an attorney, complainant may request that the Court appoint an attorney to represent complainant and that the Court permit complainant to file the action without payment of fees, costs, or other security.

**The grant or denial of the request is within the sole discretion of the Court.** Filing a request for an attorney does not extend the time in which to file a civil action. Both the request and the civil action <u>MUST BE FILED WITHIN NINETY (90) CALENDAR DAYS</u> of the date that complainant receives the final agency decision from the Department or the Commission.

_____  
MAXANNE R. WITKIN  
Director, Office of  
Employment Discrimination  
Complaint Adjudication

AUG 2 7 2019  
_____  
Date

Attachment: EEOC Form 573

DEPARTMENT OF VETERANS AFFAIRS
OFFICE OF EMPLOYMENT DISCRIMINATION COMPLAINT ADJUDICATION
WASHINGTON, D.C. 20420

AUG 27 2019

## CERTIFICATION OF SERVICE

Complainant's Name: Charlyn F. Stewart
Agency Case Nos.: 0705-XX08-2018104182;
0705-20F5-2016103782

I certify that on this date, the foregoing Final Agency Decision was sent via First Class Mail to the individuals and parties shown below.

For timeliness purposes, it shall be presumed that the parties received the foregoing Final Agency Decision within five (5) calendar days after the date it was sent via First Class Mail.

<u>Complainant</u>:

Charlyn F. Stewart
4211 Pathway Court
Fresno, TX 77545-7759

<u>ORM Field Office</u>:

Vernet.Fraser@va.gov (sent via email)

_____
(Signature of Dispatcher)

AUG 27 2019
_____
(Date of Dispatch)